UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA RAQUEL SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 9109 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED AIR LINES, INC. dba UNITED CONTINENTAL HOLDINGS, and ASSOCIATION OF FLIGHT ATTENDANTS–CWA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Wanda Santiago, a retired flight attendant, brought this suit under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, against United Air Lines, Inc., her former employer, and the Association of Flight Attendants-CWA ("AFA"), the union that represents United flight attendants. Santiago alleges that United violated the RLA by failing to submit to arbitration her grievance regarding recent changes to United's employee travel policy—changes that, Santiago asserts, benefit current employees at the expense of retirees. Santiago also alleges that the AFA violated its duty of fair representation under the RLA by failing to assist her with the grievance. Both defendants sought dismissal on the ground that Santiago, as a retiree rather than a current employee, can obtain no redress under the RLA. The court denied both motions. 2012 WL 2049486 (N.D. Ill. June 6, 2012). The court acknowledged the general rule that retirees may not sue under the RLA, but held that Santiago fell within an exception, recognized in *Pennsylvania Railroad Co. v. Day*, 360 U.S. 548 (1959), for "claims regarding … benefits that accrued while

-1-

[the employee] had been employed and subject to the protections of the RLA." *Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 912 (7th Cir. 1986).

The AFA seeks reconsideration, arguing that the *Day* exception does not apply to RLA fair representation claims. To the parties' and the court's knowledge, only one court has directly addressed this question, and it held that the *Day* exception is limited to a retiree's claims against her former employer and does not apply to fair representation claims against a union. *See Bove v. Long Island R.R.*, 1995 WL 901990, at *5-8 (E.D.N.Y. Dec. 12, 1995). This court agrees with *Bove*, grants the AFA's motion for reconsideration, and dismisses the AFA from this suit. To understand why this result is correct, it is necessary first to examine the rationale underlying the Supreme Court's recognition of a duty of fair representation under the RLA in *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192 (1944), and then to examine the rationale underlying the Court's recognition of the *Day* exception fifteen years later.

The RLA empowers the members of a given craft or class of employees (such as flight attendants) to determine, by majority vote, who shall represent them under the Act; whomever they choose (typically a labor union) then acts as the employees' exclusive representative in bargaining with the employer under the RLA. *See* 45 U.S.C. § 152, Second, Fourth, Sixth, Seventh; *Steele*, 323 U.S. at 199-200. Because even employees who are not part of the majority that selects the union will be represented exclusively by that union, *Steele* read the RLA to impose upon the union an implied duty to fairly represent all employees in the represented craft or class. *Id*. at 201-03; *see also Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46-47 (1979). That duty is grounded on the "principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steele*, 323 U.S. at 202. If the union did not owe such a duty

to all employees in the class it represented, it could use its statutorily granted position as their exclusive representative to benefit the majority that had selected it to the detriment of the minority—as happened in *Steele*, where the white majority of locomotive firemen employed by a railroad allegedly used their numbers to select a union, excluded the African-American minority of firemen from union membership, and sought to use the union's leverage to force their employer to stop hiring African-Americans as firemen altogether. *Id*. at 194-96; *see also Bhd. of R.R. Trainmen v. Howard*, 343 U.S. 768 (1952) (holding that an all-white union violated its duty of fair representation by pressuring the railroad to fire African-American employees in the represented craft and to hire white workers to replace them). As the Supreme Court explained:

> Unless the labor union representing a craft owes some duty to represent non-union members of the craft, as least to the extent of not discriminating against them as such in the contracts which it makes as their representative, the minority would be left with no means of protecting their interests, or indeed, their right to earn a livelihood by pursuing the occupation in which they are employed.

*Steele*, 323 U.S. at 201.

A union's duty of fair representation generally does not extend to retired employees. The seminal case on this point is *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971), which asked whether an employer's mid-term unilateral modification of retiree benefits is a mandatory subject of collective bargaining. The National Labor Relations Board answered in the affirmative, reasoning that "retired employees are 'employees' within the meaning of the statute for the purposes of bargaining about changes in their retirement benefits" and that "[b]argaining on benefits for workers already retired is an established aspect of current labor-management relations." *Id*. at 162 (brackets in original, internal quotation marks omitted). The Supreme Court disagreed, reasoning that "the scope of the bargaining unit controls the

extent of the [employer's] bargaining obligation," that "active and retired employees … plainly do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit," and therefore that an employer has no obligation to engage in collective bargaining with retirees. *Id*. at 165, 173. As a necessary implication of this holding, the Court stated that "[s]ince retirees are not members of the bargaining unit, the bargaining agent is under no statutory duty to represent them in negotiations with the employer." *Id*. at 181 n.20. Put another way: "A union's statutory duty of fair representation traditionally runs only to the members of its collective-bargaining unit, and is coextensive with its statutory authority to act as the exclusive representative for all the employees within the unit." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 n.22 (1984); *see also In re UAL Corp.*, 468 F.3d 456, 459 (7th Cir. 2006) ("A union's duty to bargain collectively on behalf of the members of the bargaining unit that the union represents does not extend to retired workers, because they are not members of the unit.").

It is true that *Pittsburgh Plate Glass* interpreted the National Labor Relations Act rather than the RLA, but the Supreme Court has treated the duty of fair representation—which, as noted above, originated in *Steele*, an RLA case—as a unitary doctrine across those two statutory contexts. *See Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 531-32 (1989); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564 (1976); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953). Moreover, there is no tension between *Pittsburgh Plate Glass* and *Steele*. The rationale underlying *Steele*, that the union is the exclusive bargaining representative of the craft, including employees who did not vote for the union or who are not members, does not apply to retirees. Because retirees do not participate in the selection of the union and are not exclusively represented by the union selected by current

employees, they are free to deal directly with their former employer. As the Seventh Circuit has explained, while the RLA "does not permit an employer to engage in collective bargaining with any entity other than the union that represents its employees," that prohibition "would not prevent the employer from negotiating with retirees, who are no longer members of the bargaining unit." *In re UAL Corp.*, 443 F.3d 565, 570 (7th Cir. 2006).

Excluding retirees from a union's fair representation duty makes sense. *Pittsburgh Plate Glass* recognized that requiring a union to represent both retirees and current employees would saddle the union with a conflict of interest, for retirees and current employees often want different things in dealing with the employer:

> Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that the union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits.

*Pittsburgh Plate Glass*, 404 U.S. at 173. The Eighth Circuit echoed these thoughts in explaining why the duty of fair representation does not extend to retirees:

> The difficulty for the union in representing both active employees and retirees is most apparent in the contract negotiation process. In contract negotiation the conflict of interest between the active employees and the retirees is made clear as the total benefits available from the employer are divided between active employees and retirees. Though the conflict is clearer in the negotiation process, *there is also a conflict of interest between active employees and retirees in the contract administration process.* In contract administration the union must choose which grievance to pursue with limited resources. More resources spent pursuing retiree grievances means less available for grievances of active employees. Further, a victory for a retiree in a contract administration matter may ultimately be paid for by the active employees. If a retiree victory reduces the employer's assets, there will be less available for future benefits to active employees.

*Anderson v. Alpha Portland Indus., Inc.*, 727 F.2d 177, 183 (8th Cir. 1984) (emphasis added). That potential for conflict exists in this case, as Santiago's grievance challenges an amendment to United's employee travel policy that (according to Santiago) favors employees over retirees. Interpreting the RLA to require the AFA to assist Santiago with her grievance would put it directly at odds with its members, current United flight attendants.

The question here is whether, despite all this, the *Day* exception requires unions to represent retirees in disputes regarding retirement benefits, like the travel benefits at issue here, that accrued when the retiree was an employee. *Day* held that a railroad retiree who has a grievance with his former employer arising from an asserted right that accrued during his employment must bring that grievance before the National Railroad Adjustment Board established by the RLA. *Day*, 360 U.S. at 551-52; *see also Air Line Pilots Ass'n v. United Air Lines*, 802 F.2d at 912; *Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 735 F.2d 328, 328-29 (9th Cir. 1984). The Court reached this holding even though the RLA explicitly provides the Adjustment Board with jurisdiction only over "disputes between an employee … and a carrier" and appears to limit the definition of "employee" to persons currently employed. *Id*. at 551 (quoting 45 U.S.C. § 151, Fifth; *id*. § 153(i)). The Court reasoned as follows:

> The National Railroad Adjustment Board was established as a tribunal to settle disputes arising out of the relationship between carrier and employee. All the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation for work performed while on active duty. The nature of the problem and the need for experience and expert knowledge remain the same. The same collective bargaining agreement must be construed with the same need for uniformity of interpretation and orderly adjustment of differences. There is nothing in the Act which requires that the employment relationship subsist throughout the entire process of administrative settlement. The purpose of the Act is

> fulfilled if the claim itself arises out of the employment relationship which Congress regulated.

*Id*. at 551-52. In other words, Congress established the Adjustment Board as an expert body and gave it exclusive jurisdiction over a class of labor disputes to ensure that those disputes would be handled in an expert and uniform manner; if a former railroad employee could press her grievance in court instead of before the Adjustment Board simply because, though she had been employed when the right she asserted had accrued, she had retired by the time the dispute arose, then Congress's scheme would be undermined. The RLA provides a slightly different procedure for dispute resolution in the air carrier industry, *see* 45 U.S.C. § 184, but that procedure similarly provides the exclusive procedure for resolving disputes over the interpretation of collective bargaining rights, *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994), and so the *Day* exception applies equally to retired air carrier employees like Santiago. *See Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781-82 (5th Cir. 2012); *Air Line Pilots Ass'n v. United Air Lines*, 802 F.2d at 912; *Air Line Pilots Ass'n v. Alaska Airlines*, 735 F.2d at 328-29.

The Supreme Court's reasoning and conclusion in *Day* do not require, entail, or suggest that a retiree who proceeds under *Day* in grieving a dispute with her former employer before the designated arbitral board is entitled to fair representation from the relevant union in pursuing that grievance. Nothing in *Day* changes the fact that the rationale in *Steele* for a fair representation duty does not extend to retirees, for, as noted above, retirees (unlike current employees) need not be represented by the union in negotiations with the employer and can instead deal with the employer directly. *See In re UAL Corp.*, 443 F.3d at 570. Nor does the rationale underlying *Day* undercut *Pittsburgh Plate Glass*'s observation that requiring unions to consider and fairly

represent the interests of both current employees and retirees would burden unions with a substantial conflict of interest.

To summarize, although *Day* is an exception to the RLA's general rule that a retiree's grievance with her former employer need not proceed before the designated RLA arbitral board, *Day* does not carve out an exception to the rule of *Pittsburgh Plate Glass* that the union owes no duty of fair representation to the retiree. Because the AFA does not owe Santiago a duty of fair representation, it cannot be held liable under the RLA for having breached that duty. Santiago's complaint therefore fails to state a claim against the AFA. The AFA's motion for reconsideration is granted, and the AFA is dismissed as a defendant from this case.

August 17, 2012

United States District Judge