UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA RAQUEL SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 9109 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED AIR LINES, INC. dba UNITED | ) | |
| CONTINENTAL HOLDINGS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Wanda Santiago, a retired flight attendant, brought this suit under the Railway Labor Act

("RLA"), 45 U.S.C. § 151 *et seq*., against United Air Lines, Inc., her former employer, and the

Association of Flight Attendants–CWA ("AFA"), the union that represents United flight

attendants. Doc. 1. Santiago alleges that United violated the RLA by failing to submit to

arbitration her grievance regarding recent changes to United's employee pass travel policy—

changes that, Santiago asserts, violate the collective bargaining agreement between United and

the AFA ("CBA") and benefit current employees at the expense of retirees. *Id*. at 11-13.

Santiago asks the court to compel United to submit the dispute to arbitration before the United-

AFA System Board of Adjustment ("System Board"). *Id*. at 16; Doc. 147 at ¶ 4. Santiago's

complaint also claimed that the AFA violated its duty of fair representation under the RLA by

refusing to assist her in pursuing her grievance, but the court dismissed that claim, reasoning that

the AFA owed her no duty of fair representation because she was no longer employed by United

when she sought to pursue her grievance. 2012 WL 3583057 (N.D. Ill. Aug. 17, 2012).

United has moved for summary judgment. Doc. 128. Because none of United's

proposed grounds for summary judgment is persuasive, the motion is denied. Moreover,

although Santiago has not moved for summary judgment, the court gives United notice pursuant

to Federal Rule of Civil Procedure 56(f) that the court is considering granting summary judgment

in Santiago's favor and offers United an opportunity to respond.

## Background

The following states the facts as favorably to Santiago as the record and Local Rule 56.1

allow.  *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).  Before proceeding, the court

notes that several paragraphs of Santiago's Local Rule 56.1(b)(3)(B) response deny assertions

made by the corresponding paragraphs of United's Local Rule 56.1(a)(3) statement but fail to

support her denials with provide any citation to the record or other materials.  Doc. 145 at ¶¶ 5,

8, 11-19, 28, 31, 33-34, 38, 42, 44, 51.  This violates the requirement of Local Rule

56.1(b)(3)(B) that the non-movant provide "a response to each numbered paragraph in the

moving party's statement, *including, in the case of any disagreement, specific references to the*

*affidavits, parts of the record, and other supporting materials relied upon*."  N.D. Ill. L.R.

56.1(b)(3)(B) (emphasis added).  Under Local Rule 56.1(b)(3), the above-referenced paragraphs

of United's Local Rule 56.1(a)(3) statement are deemed admitted.  *See Cracco v. Vitran Express,*

*Inc.,* 559 F.3d 625, 632 (7th Cir. 2009); *FTC v. Bay Area Bus. Council, Inc.,* 423 F.3d 627, 634

(7th Cir. 2005); *Smith v. Lamz,* 321 F.3d 680, 682-83 (7th Cir. 2003); *Bordelon v. Chi. Sch.*

*Reform Bd. of Trs.*, 233 F.3d 524, 528 & n.4 (7th Cir. 2000); *Waldridge v. Am. Hoechst Corp.,*

24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).

Santiago worked for United as a flight attendant from 1977 through 2009.  Doc. 147 at

¶ 1.  (The court cites Doc. 147, which is United's "reply" to Santiago's Local Rule 56.1(b)(3)(B)

response, not because the reply is authorized by the Local Rules, but because it conveniently sets

forth in one place the assertions in United's Local Rule 56.1(a)(3) statement and Santiago's

responses thereto.)  The AFA is the certified representative under the RLA of United's flight

attendants.  *Id*. at ¶ 3.  Pursuant to the RLA, the CBA establishes a grievance procedure that

culminates in final and binding arbitration before the System Board.  *Id*. at ¶ 45.  Section 26 of

the CBA provides that this grievance procedure is limited to "[a] group of Flight Attendants or a

Flight Attendant who has a grievance concerning any action of the Company which affects

her/him."  *Ibid*.  Section 2.N defines a "Flight Attendant" as an "employee whose duties consist

of performing or assisting in the performance of all cabin safety related functions, all en route

cabin service or ground cabin service to delayed or canceled passengers," while Section 2.J

defines "Employee" as a "Flight Attendant … who has completed training as prescribed by the

Company … and whose name appears on the Flight Attendant System Seniority List."  *Id*. at

¶ 46.  Retirees do not appear on the Seniority List.  *Id*. at ¶ 47.  At the time she filed this suit,

Santiago was retired and no longer performing any services for United.  *Ibid*.  The CBA

establishes the United Flight Attendant Retirement Board "for the purpose of hearing and

determining all disputes between the Company and its Flight Attendant employees, retirees, and

their beneficiaries," but the Retirement Board's jurisdiction is limited to disputes "which may

arise under the terms of the Flight Attendant 401(k) Plan and similar programs and payments."

*Id*. at ¶ 53.  Santiago's dispute with United does not fall within the Retirement Board's

jurisdiction.  *Id*. at ¶ 54.

Like other airlines, United offers a "pass travel" program to its current and former

employees and their eligible travel companions, which permits them to fly on United flights for

free or reduced rates if open seats are available.  *Id*. at ¶ 10.  During Santiago's employment,

United issued publications to current and former employees outlining the terms and conditions of

the pass travel policy and expressly reserving the right to eliminate or modify the policy at any

time. *Id*. at ¶¶ 11-16. United has modified the policy several times over the years. *Id*. at ¶¶ 17-22. When United made such changes, it issued individual letters, posted general notices, and sent email notifications to current and former employees, reminding them that the pass travel policy is subject to change. *Id*. at ¶ 23.

> The CBA's Section 4.M addresses United's pass travel policy, and states:
>
>> It is agreed that the pass transportation regulations as established by Company policy, effective January 1, 1987, will apply to Flight Attendants and will not be substantially changed or discontinued during the term of this Agreement without first advising the Union the reason therefor and affording the Union an opportunity to confer with the Company.

*Id*. at ¶ 40. Section 4.M has remained in effect without material modification since 1974, three years before Santiago joined United. *Ibid*. Because it prefers to maintain a single pass travel policy for all employee groups, United has steadfastly refused to negotiate with the unions representing its employees over the substance of the policy, and instead simply provides notice of the proposed changes. *Id*. at ¶ 41.

Page 332 of the CBA is a one-page summary of procedures for retirees seeking to use the pass travel policy; the summary was attached to a letter of agreement executed in 1987 that changed the circumstances under which United flight attendants could retire. *Id*. at ¶ 42. In April 2004, the System Board determined that Page 332 does not restrict United's right to change unilaterally the pass travel policy. *Ibid*. The Board stated that the pass program privileges for retirees described on Page 332 were "subject to change in the context of Section 4.M, just as were the pass privileges afforded to active employees." *Ibid*.

After merging with Continental Airlines in 2010, *id*. at ¶ 2, United determined that it would again modify the pass travel policy so that current and former employees of both United and Continental would be covered by the same policy, *id*. at ¶ 24. At the time of the merger, the

two airlines' pass travel programs differed in several respects, including the relative boarding priorities accorded to current employees versus retirees. *Id.* at ¶ 25. Under Continental's program, current employees boarded before retirees, while under United's program, retirees like Santiago who had worked for United for more than 25 years received higher priority than current employees or retirees with a shorter period of service. *Id.* at ¶¶ 26-27. After the merger, United decided that the best course would be to adopt elements of Continental's policy into a combined pass travel program for the entire company. *Id.* at ¶ 28. United announced the new program in March 2011, which was to take effect when the two airlines began operating together under the United name in March 2012. *Id.* at ¶ 29. Under the new program, every current employee and retiree is given eight one-way travel passes each year, which entitle them to free travel with the highest boarding priority level. *Id.* at ¶ 30. Passes received but not used in one year may be used in later years. *Ibid.* For flights taken beyond those eight flights per year, current employees have boarding priority over retirees. *Id.* at ¶ 31. "A substantial majority of United's flights are able to accommodate all space available travelers, in which case boarding [priority] does not affect the ability to travel on that particular flight." *Id.* at ¶ 32. The new program expands the number of flights and destinations available to employees and retirees using free passes. *Id.* at ¶ 33.

As required by Section 4.M of the CBA, a United official met with union representatives to review the new pass travel program prior to its implementation. *Id.* at ¶ 43. The AFA did not object to the new program or allege that it violated the CBA. *Ibid.* Santiago did object, first in a letter to United's managing director of labor relations, then in a second letter to an AFA officer, and finally by filing this lawsuit. *Id.* at ¶¶ 36-37.

**Discussion**

Before reaching United's arguments for summary judgment, the court will address two preliminary matters. The first is United's failure to comply with Local Rule 56.2, which requires that "[a]ny party moving for summary judgment against a party proceeding pro se shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment' in the form indicated below." N.D. Ill. L.R. 56.2. The prescribed notice explains the nature of a summary judgment motion and tells the *pro se* litigant what she must do to prevent summary judgment. Santiago, who is *pro se*, recognized in her summary judgment response that United failed to provide her with the Local Rule 56.2 notice, and asked that United's motion be denied as a result. Doc. 145 at 1. United's reply acknowledged that it had violated the rule, but argued that Santiago was not prejudiced, as her recognition of United's noncompliance necessarily means that she was aware of the rule and the contents of the notice. Doc. 146 at 3. United is right that Santiago was not prejudiced, and a movant's failure to give the Local Rule 56.2 notice is without legal significance "if no prejudice resulted." *Kincaid v. Vail*, 969 F.2d 594, 599 (7th Cir. 1992); *see also Timms v. Frank*, 953 F.2d 281, 286-87 (7th Cir. 1992) ("[I]n light of Timms's inability to show that the lack of notice prejudiced her, the district court's grant of summary judgment is affirmed."). At any rate, Santiago could hardly be prejudiced by the court's decision on the present motion, which is to deny it in full.

The second preliminary matter is Santiago's motion to compel further discovery from United and her request under Federal Rule of Civil Procedure 56(d) (which she refers to under its former designation, Rule 56(f)) that the court defer ruling on the summary judgment motion until she can gather more facts to oppose the motion. Docs. 141, 143, 152. Rule 56(d) provides that a

court may defer consideration of a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d) (emphasis added). Santiago's filings describe a wide range of discovery that she claims United has wrongfully denied her, including the deposition of United CEO Jeff Smisek. Doc. 141 at 13. But she does not explain what facts "essential to justify [her] opposition" she thinks she might be able to extract from the allegedly withheld documents and depositions. Santiago's Rule 56(d) motion accordingly is denied. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648 (7th Cir. 2006) ("Rule 56[d] requires a party to state the reasons why it cannot adequately respond to the summary judgment motion without further discovery"); *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) ("If a party cannot present 'facts essential to justify his opposition,' Rule 56[d] requires that it explain why."). In any event, Santiago does not need further discovery to oppose United's motion because the admitted facts recounted above, together with the legal principles discussed below, establish that United is not entitled to summary judgment.

Santiago claims that she has a contractual right under the CBA to the higher priority accorded her, as a retiree, by the pass travel policy in effect at United prior to its merger with Continental, and that United violated the RLA by refusing to submit the matter to arbitration before the System Board. Doc. 1 at 11-13. The RLA provides in relevant part:

> [D]isputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, … shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

45 U.S.C. § 184. Section 184 requires air carriers and the unions that represent their employees to jointly establish such adjustment boards, as United and the AFA have done here by establishing the System Board. *Ibid*. As interpreted by the Supreme Court, § 184 requires that "minor disputes"—those arising, as this one does, out of a disagreement as to the proper interpretation of a CBA—be resolved "through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Haw. Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). United offers five reasons why Santiago is not entitled to an order enjoining United to proceed to arbitration of her grievance before the System Board, which the court will address in turn.

First, United asserts that Santiago's position that the CBA precludes United from diminishing her pass travel priority rights is so weak that there is no need to even let the System Board consider it. Doc. 129 at 17-19. United says that the court should act as a "gatekeeper," meaning that the court's "role in the present matter is to decide whether Santiago's claim that the CBA prohibits modification of United's pass travel policy has sufficient arguable merit that it must be resolved by an adjustment board[,] or whether Santiago's position is 'frivolous' or 'obviously insubstantial.'" *Id*. at 19.

United's argument runs headlong into the holding of *Consolidated Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299 (1989) ("*Conrail*"), that "under the RLA, it is not the role of the courts to decide the merits of the parties' dispute." *Id*. at 318; *see also Ryan v. Union Pac. R.R. Co.*, 286 F.3d 456, 460 (7th Cir. 2002) ("The federal courts have jurisdiction to interpret the Railway Labor Act; they lack jurisdiction only to interpret collective bargaining agreements made under the authority of the Act.") (citations omitted). The court's role, rather, "is limited to determining" whether the dispute is major or minor. *Conrail*, 491 U.S. at 318-19. As the

Seventh Circuit put it, "Congress charged the federal courts with a seminal but limited role under

this regime—that of taxonomist. Courts are to sort labor disputes into two piles, major or

minor." *Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635

(7th Cir. 1997). If a court classifies the dispute as minor, then the dispute "is subject to

compulsory and binding arbitration … before an adjustment board [under the RLA]." *Conrail*,

491 U.S. at 303. The adjustment board's jurisdiction to resolve minor disputes is "exclusive."

*Bhd. of Maint. of Way Emps. v. Union Pac. R.R. Co.*, 358 F.3d 453, 456 (7th Cir. 2004) ("The

RLA grants exclusive jurisdiction to resolve 'minor' disputes regarding railway labor agreements

to arbitrators on the National Railroad Adjustment Board or adjustment boards established by an

employer and a union."); *see also Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)

("only the arbitral boards convened under the aegis of the Railway Labor Act have the authority

to determine the rights conferred by a collective bargaining agreement in the airline industry").

There can be no doubt that Santiago's grievance qualifies as a minor dispute. *Conrail*

endorses the following test for determining whether a dispute is major or minor:

> If the disputed action of one of the parties can "arguably" be justified by the
> existing agreement or, in somewhat different statement, if the contention that
> the labor contract sanctions the disputed action is not "obviously
> insubstantial", the controversy is a minor dispute within the exclusive
> province of the [adjustment board].

491 U.S. at 306 (brackets omitted). The "disputed action" here—United's unilateral change to

the pass travel program—is minor because it can be "arguably justified" by the CBA. Collective

bargaining agreements "may include implied, as well as express terms," and "it is well

established that the parties' practice, usage and custom is of significance in interpreting their

agreement." *Id.* at 311 (internal quotation marks omitted). Although Section 4.M of the CBA

does not expressly grant United the unilateral right to modify the pass travel policy, past practice

suggests that Section 4.M impliedly allows such unilateral modifications, as United has made unilateral modifications numerous times in the past and has consistently refused to negotiate the substance of the policy.  Doc. 147 at ¶ 41.  That makes United's action "arguably justified" under the CBA, and thus the subject of a minor dispute.  *See Conrail*, 491 U.S. at 312 (holding that "Conrail's authority to conduct physical examinations is an implied term of the collective-bargaining agreement, established by longstanding past practice," because "Conrail routinely has required its employees to undergo physical examinations"); *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1029 (6th Cir. 2001).

*Conrail* recognizes that the line between major and minor disputes may be described in a slightly different, though substantively identical, way: "the line … looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action."  491 U.S. at 305.  That is, "[t]he distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement."  *Ibid*.  That precisely describes the dispute here—Santiago claims that the CBA gives her certain pass travel rights, and United responds that the CBA does no such thing.  Focusing on this passage from *Conrail*, the Supreme Court later noted that, "[o]bviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA."  *Hawaiian Airlines*, 512 U.S. at 265.  Again, that precisely describes the parties' dispute, as Santiago's pass travel claim rests exclusively on the CBA and cannot possibly involve rights existing independently of the CBA.  It follows that the System Board has exclusive jurisdiction to resolve Santiago's dispute with United and that the court's role ends here.

United's contrary position rests on a misreading of *Conrail*. United contends that the "same standard" used by courts to distinguish major from minor disputes also "should apply where a party seeks to compel arbitration." Doc. 129 at 19. From this premise, and as noted above, United concludes that "the court's role in the present matter is to decide whether Santiago's claim that the CBA prohibits modification of United's pass travel policy has sufficient arguable merit that it must be resolved by an adjustment board or whether Santiago's position is 'frivolous' or 'obviously insubstantial.'" *Ibid*. But *Conrail* uses the term "obviously insubstantial" solely to articulate the test for determining whether the disputed action—most often, the employer's—gives rise to a minor dispute or a major dispute. *See Conrail*, 491 U.S. at 307 (explaining that the "arguably justified" standard and the "obviously insubstantial" standard are "essentially the same in their result"); *Atchison, Topeka & Santa Fe Ry. Co. v. United Transp. Union*, 734 F.2d 317, 321 (7th Cir. 1984) ("Where the parties disagree as to whether the existing contract permits the [employer] carrier's actions, the dispute is minor unless the carrier's claims of contractual justification are 'frivolous' or 'obviously insubstantial.'"); *Gen. Comm. of Adjustment v. CSX R.R. Corp.*, 893 F.2d 584, 591 (3d Cir. 1990) (asking whether the railroad's assertion that the CBA and established past practices justified its disputed action "is an arguably justifiable and not obviously insubstantial interpretation of the existing agreement"); *Bhd. Ry. Carmen of U.S. & Canada, AFL-CIO-CLC v. Norfolk & W. Ry. Co.*, 745 F.2d 370, 375 (6th Cir. 1984) (framing the test as "whether the construction of the agreement which would sanction the action is 'not obviously insubstantial'"). As the Supreme Court subsequently made clear, the "'arguably justified' standard [in *Conrail*] … was employed *only* for policing the line between major and minor disputes." *Hawaiian Airlines*, 512 U.S. at 265. The "arguably justified" or "obviously insubstantial" standard was not established to frame a test a court may or must use to

decide whether the substantive position advanced by the party seeking arbitration—particularly where, as here, the party seeking arbitration was *not* the party that took the disputed action—is so weak that the dispute is not worth sending to arbitration. To the contrary, *Conrail* expressly prohibits courts from engaging in that kind of substantive inquiry. 491 U.S. at 318 ("it is not the role of the courts to decide the merits of the parties' dispute").

The lone authority cited by United to support its position, *CareFlite v. Office & Professional Employees International Union, AFL-CIO*, 612 F.3d 314 (5th Cir. 2010), is inapposite. Doc. 129 at 19. As the Fifth Circuit has acknowledged, *CareFlite* was decided by a two-judge quorum and the two judges expressed different rationales to support its ultimate holding, *see Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 784-85 (5th Cir. 2012), which weakens whatever persuasive force *CareFlite* might have. At any rate, neither judge's opinion in *CareFlite* helps United. Judge Dennis reasoned that what would otherwise have been a minor dispute about an employee's termination did not arise out of the CBA, and so did not fall within the adjustment board's exclusive jurisdiction, due to a CBA provision excluding the dispute from arbitration. 612 F.3d at 321 ("The Union and CareFlite agreed to a CBA excluding discharges arising from failure to obtain an ATP from arbitration and the grievance process. The text of the CBA to this effect states 'termination of employment resulting from a pilot's failure to obtain an ATP within the time requirements of this section is non-grievable and non-arbitrable.'"). By contrast, Judge Elrod reasoned that the grievance *was* "a minor dispute arising from the interpretation of the CBA," but concluded that the RLA permits a carrier and a union to agree "to exclude certain minor disputes from arbitration" and that they had permissibly done so in the CBA provision referenced by Judge Dennis. *Id*. at 325 (Elrod, J., concurring).

12

Both judges in *CareFlite* rested their shared conclusion (that the dispute did not have to be arbitrated) on the CBA provision making the parties' dispute non-arbitrable. In this case, by contrast, United has not identified any CBA provision purporting to limit the scope of arbitration; rather, it asks the court to rule on the merits of Santiago's interpretation of the CBA's pass travel program provision as a prelude to finding that her interpretation is so weak that arbitration should not go forward. Neither judge's opinion in *CareFlite* supports that view.

Second, United contends that "even if the terms of the 2005-10 CBA provided an arguable basis to challenge United's modifications to the pass travel policy, AFA's consent to the modifications and the execution of the 2012-16 CBA preclude any challenge by Santiago." Doc. 129 at 21. The argument is that "[b]y failing to object to the proposed changes in 2011, and by executing a new agreement in 2012 that incorporates the modified pass travel policy, AFA has plainly consented to the modifications." *Ibid*. This argument just pushes United's problem back one level, since the court cannot determine whether the new CBA constitutes consent by the AFA to United's change to the pass travel policy without interpreting and applying the CBA's language. United implicitly recognizes the point in arguing: "The new agreement retained the language of Section 4.M except to eliminate the reference to the date of the company policy. Thus, the current agreement between Untied and AFA *by its express terms* not only permits United to maintain the pass travel policy implemented in March 2012, it *requires* United to do so absent exercise of United's rights under Section 4.M." *Ibid*. (first emphasis added). Whether the CBA's terms are clear or not, this court cannot interpret them for the reasons discussed above.

The decisions cited by United to support its second argument are inapposite. They all go to whether United's interpretation of the CBA is correct as a substantive matter—that is, whether the CBA allows the AFA to consent to a new CBA and thereby wipe out whatever rights retirees

like Santiago may have had under the earlier CBA—while the dispositive question here is which tribunal, the court or the System Board, has jurisdiction to decide that substantive question. In *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524 (7th Cir. 1992), the Seventh Circuit held that a union did not violate the duty of fair representation it owed the airline's employees by making certain concessions to the airline. *Id*. at 1536. The court explained that "[i]f the 1987 agreement creates rights that the [employees] may enforce as third-party beneficiaries, the parties' disagreement is a 'minor dispute' that must be submitted to an arbitral panel under the Railway Labor Act. We need not decide whether this is appropriate because the [employees] ha[ve] spurned the procedures under the Railway Labor Act." *Ibid*. (citation omitted). *Rakestraw* provides no guidance for a case where, like here, the plaintiff seeks to follow RLA procedures.

The other two cases cited by United, *In re UAL Corp.*, 468 F.3d 456 (7th Cir. 2006), and *In re UAL Corp.*, 443 F.3d 565 (7th Cir. 2006), are equally irrelevant as to the proper allocation of authority between a court and an adjustment board in a minor dispute. Those two decisions, which arose out of United's bankruptcy, rejected challenges by retired pilots to an agreement between the union and United in the bankruptcy case that diminished the retirees' rights. *See* 468 F.3d at 458-59; 443 F.3d at 569-70. The Seventh Circuit did not discuss in those decisions, and in fact had no occasion to discuss, the proper tribunal under the RLA to interpret the agreement. As explained above, the interpretation of the CBA in this case, however clear and explicit it may be regarding United's ability to modify the pass travel policy, is solely for the System Board.

Third, United argues that "as a retiree, Santiago has no right to compel arbitration under the RLA unless the rights [that she claims] vested during her employment, and the CBA did not create any vested rights to pass travel upon retirement." Doc. 129 at 22. The legal backdrop of

this argument was addressed in the court's opinion denying United's Rule 12(b)(6) motion. 2012 WL 2049486, at *3-4 (N.D. Ill. June 6, 2012).  As a general rule, the RLA applies only to "employees," and the RLA's definition of "employee" does not on its face include retirees.  *See* 45 U.S.C. § 151, Fifth (defining "employee" as including "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Surface Transportation Board"); 45 U.S.C. § 184 (providing for adjustment boards to resolve minor disputes "between an employee or group of employees and a carrier or carriers by air"). The Supreme Court in *Pennsylvania Railroad Co. v. Day*, 360 U.S. 548 (1959), recognized an exception to that general rule, holding that the RLA covered a dispute involving an employee who retired after initiating a claim for unpaid compensation and that the appropriate adjustment board therefore had "exclusive primary jurisdiction" over the retiree's claims.  *Id*. at 551-52; *see also Air Line Pilots Ass'n v. Alaska Airlines, Inc.*, 735 F.2d 328, 328-29 (9th Cir. 1984) (holding, in accord with *Day*, that the RLA governed a retired pilot's grievance regarding the calculation of his retirement benefits).  And the Seventh Circuit has explained that the *Day* exception applies to "claims regarding … benefits that accrued while [the employee] had been employed and subject to the protections of the RLA."  *Air Line Pilots Ass'n, Int'l v. United Air Lines, Inc.*, 802 F.2d 886, 912 (7th Cir. 1986).

United argues that Santiago is not an "employee" under *Day*, that she therefore is not an "employee" under § 184, and therefore that § 184 gives her no entitlement to proceed before the System Board.  And the reason why Santiago is not an "employee" under *Day*, United says, is that the pass travel priority benefits she claims did not "accrue" during her employment because

the CBA does not convey any entitlement to maintain a particular boarding priority, meaning that the claimed rights never "accrued" at all.  Doc. 129 at 23-24.

The court rejected United's argument at the Rule 12(b)(6) stage, and does the same, albeit for different reasons, on summary judgment.  Resolving United's argument in its favor would require the court to find that the CBA does not entitle retirees to maintain any particular boarding priority, and thus would require the court to evaluate the substantive merits of Santiago's claim, as a prelude to determining whether the claim is subject to arbitration before the System Board. United has not provided, and the court has not found, any authority that would allow the court to follow that course.  If courts did follow that course, the *Day* exception would be eviscerated.  In cases where a retiree seeks to assert a right against her former employer before an adjustment board, the employer will argue that the right does not exist, for if the employer conceded that the right did exist, there often if not always would be nothing to arbitrate.  And if a court could prevent arbitration by deciding that the asserted right did not exist under the CBA and therefore could not have accrued during the retiree's employment, then the adjustment board's exclusive jurisdiction over the interpretation of CBAs in minor disputes would be usurped and nullified with respect to retirees, and *Day* would have little or no effect.

That cannot be what the Supreme Court intended in *Day*.  The better reading of that decision is that a retiree is an "employee" under *Day* if the right she asserts accrued during her employment, *if it accrued at all*; the question whether it *in fact* accrued according to the terms of the CBA would then be left to the adjustment board.  Here, there is no dispute that the particular pass travel policy that Santiago wants to retain was in force during a period of her employment with United.  If she has a right to prevent United from modifying that policy—a question that

this court lacks jurisdiction to resolve—then that right accrued during her employment. It follows that Santiago is an "employee" under *Day* and, accordingly, under 45 U.S.C. § 184.

Fourth, United argues that "even if Santiago were an active employee, she would have no right to obtain a System Board hearing ... because the CBA does not allow an employee to pursue a grievance to arbitration without AFA's approval and because Santiago failed to file a timely grievance or process such grievance as required under the CBA." Doc. 129 at 24. United's initial suggestion—that the CBA does not allow individual employees to pursue grievances to arbitration without the AFA's approval—raises a question of law: Does the RLA give individual airline employees a statutory right to arbitration before an adjustment board? The answer is "yes," and so any provisions in the CBA purporting to subject that right to the AFA's approval are invalid and unenforceable.

That an individual employee (as Santiago is under *Day*) has a right to bring a grievance before an adjustment board is evident from the text of § 184:

> The disputes between *an employee* or group of employees *and a carrier* or group of carriers by air growing out of grievances ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties *or by either party* to an appropriate adjustment board ....

45 U.S.C. § 184 (emphases added). Section 184 provides that when a dispute arises between "an employee" and "a carrier" and is not amicably resolved, "either party" may unilaterally bring that dispute before the adjustment board. United argues that the term "either party" is "a clear reference to the carrier and union." Doc. 129 at 27. That argument cannot be reconciled with the statute. The initial portion of the above-quoted passage refers to "disputes between an employee or group of employees and a carrier or group of carriers by air," and so the later reference to "parties" plainly refers to *both* "an employee" (an individual like Santiago, who is

an employee under *Day*) *and* a "group of employees" (either a group of individuals or a union).

Nothing in § 184 suggests that the union and employer could agree to place a limitation upon an

individual employee's right to unilaterally seek relief before an adjustment board.

The parties have not cited and the court has not found any Supreme Court or Seventh

Circuit decision on point. Doc. 129 at 27 ("the Seventh Circuit has never expressly addressed

the question under [§ 184]"). In *Capraro v. United Parcel Service Co.*, 993 F.2d 328 (3d Cir.

1993), however, the Third Circuit read § 184 in the same way as this court:

> [T]he RLA reflects a clear decision by Congress that minor disputes should be
> arbitrated, not litigated. … [H]owever, the RLA also reflects a strong
> congressional interest in seeing that employees are not left "remediless" and
> without a forum to present their grievances. Courts must keep both of these
> congressional objectives in mind, and one should be sacrificed to the other
> only when there is no realistic alternative. …
>
> [T]he grievance and arbitration process is not optional under the RLA.
> Congress intended the RLA's procedures, particularly the Adjustment Boards,
> to be the exclusive means of dealing with minor matters involving the
> interpretation of a collective bargaining agreement and for all aggrieved
> employees to have access to such procedures. It necessarily follows that an
> employer and a union, through a negotiated collective bargaining agreement,
> cannot deprive a category of employees of access to the grievance and
> arbitration process. Thus, if the collective bargaining agreement here is read
> to deny such access, the relevant clauses, to that extent, are invalid and
> unenforceable. Therefore, if the Adjustment Board were to refuse to entertain
> Capraro's claim (or if UPS were to refuse to participate in the arbitration
> proceedings), Capraro would be entitled to a judicial order compelling
> arbitration. Such an order would serve the competing policies of ensuring that
> employees are not left remediless, and that minor disputes are resolved
> through arbitration rather than litigation.

*Id*. at 336-37 (citations and footnotes omitted). At least two district courts have followed

*Capraro. See Brady v. Allied Pilots Ass'n*, 2003 WL 23119160, at *3 (N.D. Tex. Dec. 15, 2003)

(discussing *Capraro* and refusing to rule that "a union employee who is covered by the RLA can

be contractually precluded from independently pursuing arbitration before an [adjustment

board]"); *Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 855 F. Supp. 27, 32 (D.N.H.

1993) ("The court is persuaded by *Capraro* that a collective bargaining agreement may not

exclude a category of employees from the grievance and arbitration process.  The reasoning in

*Capraro* is consistent with the congressional intent mandating arbitration rather than litigation of

minor disputes and ensuring employees have access to a forum in which to present their

complaints.  Absent such a forum, employees would be unable to enforce bargained-for

substantive rights.").

In advancing its contrary position, United cites *Martin v. American Airlines, Inc.*, 390

F.3d 601 (8th Cir. 2004), which states in relevant part:

> Martin contends that the RLA provides airline employees with a statutory
> right to pursue arbitration individually before an airline's system board of
> adjustment.  We disagree.  The RLA provides *railroad employees* the right to
> pursue arbitration individually before the National Railroad Adjustment
> Board.  45 U.S.C. § 153 First (j).  However, the RLA specifically provides
> that § 153 is not applicable to air carriers.  45 U.S.C. §§ 181 and 182.  We will
> not ignore the express statutory exclusions in §§ 181 and 182 in order to apply
> § 153 to the airline industry.

390 F.3d at 608-09 (one citation and one footnote omitted).  *Martin* is unpersuasive.  The

decision correctly notes that railroad employees have the right to pursue arbitration individually

before the National Railroad Adjustment Board under 45 U.S.C. § 153, and also that §§ 181 and

182 provide that § 153 does not apply to air carriers.  But *Martin* does not mention § 184, which

*does* apply to air carriers and their employees.  Because *Martin* does not acknowledge the

statutory provision that mandates the establishment of air carrier adjustment boards and permits

individual employees to unilaterally commence proceedings before them, *Martin* does not

undermine this court's and *Capraro*'s reading of that provision.

United also refers to two Seventh Circuit decisions interpreting § 153.  The first holds

that individual employees have a right under § 153, First, to proceed individually before the

National Railroad Adjustment Board and that this right "cannot be nullified by agreement

between the carrier and the union." *Slagley v. Illinois Cent. R.R. Co.*, 397 F.2d 546, 551 (7th Cir.

1968), *overruled on other grounds*, *Orphan v. Furnco Constr. Corp.*, 466 F.2d 795, 803 n.20

(7th Cir. 1972). It is difficult to see how *Slagley* supports United's position. The second

decision is closer to the mark; it has a footnote stating in dicta that individual railroad employees

have no right under § 153, Second, to unilaterally bring a matter before a special adjustment

board. *See O'Neill v. Pub. Law Bd. No. 550*, 581 F.2d 692, 696 n.7 (7th Cir. 1978). But the text

of § 153, Second, unlike the text of § 184, appears to limit to unions and carriers the right to

unilaterally bring a matter to such a special adjustment board:

> If written request is made upon any individual carrier *by the representative of*
> *any craft or class of employees* of such carrier for the establishment of a
> special board of adjustment to resolve disputes otherwise referable to the
> Adjustment Board, or any dispute which has been pending before the
> Adjustment Board for twelve months from the date the dispute (claim) is
> received by the Board, or if *any carrier makes such a request upon any such*
> *representative*, the carrier or the representative upon whom such request is
> made shall join in an agreement establishing such a board within thirty days
> from the date such request is made.

45 U.S.C. § 153, Second (emphases added). *O'Neill* focused on the emphasized text in holding

that "[u]nder the terms of § 3 Second of the Act, an individual employee has no right to bring a

matter before a special adjustment board. Only a rail carrier or '*the representative* of any craft or

class of employees' are authorized by the statute to bring a matter before a special adjustment

board." 581 F.2d at 696 n.7 (emphasis added). *O'Neill* therefore does not speak to the different

statutory scheme set forth in § 184.

United also contends that *Whitaker v. American Airlines, Inc.*, 285 F.3d 940 (11th Cir.

2002), "uph[e]ld[] exclusion of [a] probationary employee from [the] grievance procedure."

Doc. 129 at 28. *Whitaker* did not such thing; after acknowledging *Capraro*, *Whitaker* stated:

"We decline to decide, however, whether probationary employees covered by [§ 184] may

lawfully be denied access to a board of adjustment under the terms of a collective bargaining

agreement or whether the Agreement here purports to deny such access, as we find these issues unnecessary to the disposition of this case. Instead, we rest our decision upon the fact that Whitaker's claim over his termination does not constitute a minor dispute within the contemplation of 45 U.S.C. § 184, and therefore is not eligible for adjustment by the Board." 285 F.3d at 945. Thus, *Whitaker* upheld the denial of an employee's access to an adjustment board not because the union could veto the employee's access, but because the dispute was not a minor dispute. Here, the dispute is a minor dispute.

United next resorts to policy, contending that there are "strong practical and policy reasons to limit the right of individuals to invoke arbitration before a contractually-created adjustment board." Doc. 129 at 28. At base, United's policy argument is that § 184 requires air carriers and unions to establish and maintain adjustment boards, in contrast to the government-funded National Railroad Adjustment Board established by § 153 to handle railroad employee grievances. United argues that because the costs of the neutral arbitrator who must be hired to decide adjustment board cases "can easily run $25,000 to $50,000 per case, or more," Doc. 129 at 29, the court should avoid an interpretation of § 184 that would allow individual employees to subject carriers and unions to such costs without the carrier's and the union's prior consent. That argument is unpersuasive. It is not uncommon for regulatory statutes such as the RLA to impose economic costs on regulated industries, and the costs of which United complains do not justify departing from the clear language of § 184.

For these reasons, the court agrees with *Capraro* that the text of § 184 precludes United from deciding, on its own or with the AFA, to bar Santiago from bringing her grievance to the System Board. And although United gestures at what might be an alternate ground for summary judgment, that "Santiago failed to file a timely grievance or process such grievance as required

under the CBA," it does nothing to develop that argument, Doc. 129 at 24, which results in a forfeiture, at least for purposes of this summary judgment motion. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks omitted). Accordingly, the court rejects United's argument that Santiago has no individual right to proceed before the System Board.

Fifth and finally, United argues that the court's dismissal of Santiago's claims against AFA "precludes her from pursuing claims against United." Doc. 129 at 29. United says that "an order aimed solely at United would be completely unenforceable because United cannot conduct a System Board hearing without AFA's active participation." *Ibid*.

This argument is a nonstarter. When granting the AFA's motion to dismiss, the court was operating under the belief, abetted by the AFA's briefs, that Santiago could proceed before the System Board independently, without the AFA having to assist her. 2012 WL 3583057, at *3 ("Interpreting the RLA to require the AFA to assist Santiago with her grievance would put it directly at odds with its members, current United flight attendants."); *id*. at *4 ("In other words, Congress established the Adjustment Board as an expert body and gave it exclusive jurisdiction over a class of labor disputes to ensure that those disputes would be handled in an expert and uniform manner; if a former railroad employee could press her grievance in court instead of before the Adjustment Board simply because, though she had been employed when the right she asserted had accrued, she had retired by the time the dispute arose, then Congress's scheme would be undermined."); *ibid*. ("The Supreme Court's reasoning and conclusion in *Day* do not require, entail, or suggest that a retiree who proceeds under *Day* in grieving a dispute with her

22

former employer before the designated arbitral board is entitled to fair representation from the relevant union in pursuing that grievance."). If United were right that nobody can obtain a hearing before the System Board without the AFA's consent, and if the AFA refuses to permit Santiago such a hearing, then the court's dismissal of the AFA effectively ended this case in favor of United. That certainly was not the court's intent. If the System Board rather than this court is the appropriate forum to resolve Santiago's grievance, and if the AFA seeks for some reason to thwart an order of this court compelling arbitration before the board, then the appropriate remedy might be to require the AFA to cooperate. *See* Fed. R. Civ. P. 65(d)(2); *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2010) (citing Rule 65(d)(2)(C) for the proposition that where an injunction requires certain defendants to schedule high school basketball games on particular nights, and where the games cannot be scheduled without the cooperation of other parties, those other parties "must comply with [the] injunction," for "otherwise the plaintiffs are left without an effective remedy").

United discusses decisions holding "that if the duty of fair representation claims against the union are dismissed, the breach of contract claims against the employer cannot stand." Doc. 129 at 29. For instance, in *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274 (7th Cir. 1985), the Seventh Circuit stated that "[i]f the RLA-based DFR [duty of fair representation] claim against the union is dismissed, the claim against the employer must also be dismissed." *Id*. at 1283. In that case, the plaintiff was challenging an agreement between a union and an employer and was alleging that the union had violated its duty of fair representation in negotiating the agreement and that the employer was also liable because it had colluded with the union in that violation. *See id*. at 1281-83. The Seventh Circuit explained that "the claim here is that United is a party to [the union's] breach. We first note the conceptual anomaly that

would arise if United were held liable as a party where [the union], the principal, had been held

not to have violated its duty.  If the RLA-based DFR claim against the union is dismissed, the

claim against the employer must also be dismissed." *Id*. at 1283.

Read in context, the decision makes perfect sense: if the plaintiff's claim is that the union

is liable for breaching its duty of fair representation and the airline is liable as a party to that

breach, then a determination that the union committed no breach necessarily entails that the

airline was not a party to any breach and so is not liable.  *Cf. Freed v. Weiss*, 2013 WL 2897779,

at *9 (N.D. Ill. June 13, 2013) ("If Weiss did not breach contractual and fiduciary duties owed to

Freed, than Chase cannot be liable for having induced or aided and abetted a breach.").  That

principle has no application here, where Santiago's claim is that she had a right under the CBA

to certain pass travel policy benefits and that United violated her right by changing the policy.

That is a direct claim against United rather than one dependent on or derivative of some other

claim against the AFA.

At any rate, in dismissing Santiago's claim against the AFA, the court concluded not that

the AFA was fairly representing Santiago, but rather that the AFA was under no obligation to

represent her fairly because it was not representing her at all and had no duty to do so.  2012 WL

3583057, at *4-5 ("Nothing in *Day* changes the fact that the rationale in *Steele* [*v. Louisville &

Nashville Railroad Co.*, 323 U.S. 192 (1944),] for a fair representation duty does not extend to

retirees, for, as noted above, retirees (unlike current employees) need not be represented by the

union in negotiations with the employer and can instead deal with the employer directly.").  As

already discussed, neither United alone nor United and the AFA together have power to block

Santiago's access to the System Board.  If the AFA seeks to block Santiago even if this court

enjoins United to allow her to proceed, then the court may have to enjoin the AFA to participate

in whatever way is necessary to give Santiago the hearing to which she may be entitled under

§ 184. *See Parker*, 667 F.3d at 924.

## Conclusion

For the foregoing reasons, United's motion for summary judgment is denied.

Furthermore, United is hereby informed pursuant to Rule 56(f) that the court believes, in light of

the facts and law discussed above, that Santiago is entitled to summary judgment and to an

injunction requiring United to submit her grievance to arbitration before the System Board. If

United disagrees, it is invited to file a brief explaining why there is a genuine dispute as to some

material fact and/or why Santiago is not entitled to judgment as a matter of law. United shall file

its brief by September 19, 2013; Santiago may respond by October 10, 2013.

August 22, 2013                  _____

                                United States District Judge