UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WANDA RAQUEL SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 9109 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| UNITED AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Among the perks of working for an airline is the ability to fly for free or at reduced rates. United Airlines is no exception. Pursuant to its "pass travel" program, United issues to all of its employees, both active and retired, ticket vouchers for travel on any United flight—contingent, however, on there being an unsold seat on the plane. Doc. 163 at 3-4 (reported at 969 F. Supp. 2d 955, 958 (N.D. Ill. 2013)). In the event there are fewer empty seats than employees seeking to travel, United must prioritize their requests. 969 F. Supp. 2d at 959. When Wanda Santiago, a United flight attendant, retired in 2009 after 33 years with the airline, retirees with more than 25 years' service always had the highest priority. *Ibid.* That changed after United merged with Continental Airlines in 2010. Now, in some circumstances, active employees have priority over retirees, even those like Santiago with lengthy tenures. *Ibid.*

Disappointed with this change to the pass travel program, Santiago sued United and her union, the Association of Flight Attendants ("AFA"), under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Doc. 1. Alleging that the change violated the collective bargaining agreement ("CBA") negotiated by United and the AFA, Santiago claimed that United violated the RLA by failing to submit to arbitration her challenge to the change, and asked the court to

1

compel United to submit the dispute to arbitration.  Santiago also claimed that the AFA breached its duty of fair representation under the RLA by refusing to assist her in pursuing her challenge.  The court denied United's motion to dismiss, Docs. 62-63 (reported at 2012 WL 2049486 (June 6, 2012)), but granted the AFA's, Docs. 103-104 (reported at 2012 WL 3583057 (N.D. Ill. Aug. 17, 2012)).

United then moved for summary judgment.  Doc. 128.  The court denied the motion on the ground that Santiago, although retired, is still an "employee" under the relevant provision of the RLA, meaning that her dispute is subject to mandatory arbitration.  969 F. Supp. 2d at 965-66.  In addition, the court ordered United, pursuant to Rule 56(f), "to file a brief explaining … why Plaintiff is not entitled to judgment as a matter of law" on Santiago's request that the court enjoin United to conduct the arbitration.  Doc. 162.  Before responding to the Rule 56(f) notice, United sought and received leave to depose Santiago regarding whether she had exhausted the company's internal grievance procedures.  Docs. 168, 172.  And in the event it turned out that judgment could not be entered for either party as a matter of law, the court set trial for February 9, 2015.  Doc. 201.  In its Rule 56(f) brief, United not only opposes the court's granting summary judgment to Santiago, but also seeks summary judgment on the ground that Santiago failed to exhaust the company's internal grievance procedures.  Doc. 188.  Santiago responded in a series of filings.  Docs. 189, 193-197, 199-200.  For the following reasons, summary judgment is granted to United.

## Background

Much of the factual and legal background is set forth in the court's previous opinions in this case and so need not be recounted in full.  969 F. Supp. 2d at 957-59; 2012 WL 2049486, at

2

*1-2. All facts are stated as favorably to Santiago as permitted by the record. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

Santiago worked for United as a flight attendant from 1977 through 2009. 969 F. Supp. 2d at 958. As mentioned, United through its pass travel program has long offered active and retired employees the chance to fly on United flights for free or at reduced rates if open seats are available. *Ibid*. Continental had a similar program, but with different rules—including, as pertinent here, the rule regarding relative boarding priority in the event there were fewer open seats than active and retired employees seeking to fly. *Id.* at 959. After merging with Continental in 2010, United consolidated the two airlines' programs. *Ibid*. Under the new program, each active and retired employee is given eight one-way travel passes each year, which entitles the employee to free travel with a boarding priority level based purely on years of service. *Ibid*. For flights taken beyond those eight flights per year, however, current employees have boarding priority over retirees. *Ibid*. United announced the new program in March 2011. *Ibid*. Santiago learned of it on March 30, 2011. Doc. 188-2 at 5.

Santiago believes that United's unilateral decision to change the pass travel program's priority rules violated the CBA. 969 F. Supp. 2d at 958. United disagrees, arguing that the CBA gives it the right to modify or even eliminate the program in its sole discretion. *Ibid*. The RLA governs all such disputes between airlines and their employees: "The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, … shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an

appropriate adjustment board[.]" 45 U.S.C. § 184. "Such boards of adjustment may be established by agreement between employees and carriers," *ibid*., and United and the AFA have established such a board, called the United-AFA System Board of Adjustment ("System Board"), 969 F. Supp. 2d at 957. Whether Santiago's dispute with United is governed by § 184 depends on two questions: whether she is an "employee" within the meaning of the RLA, and, if so, whether her dispute is of the sort described in § 184.

In denying United's summary judgment motion, the court answered both questions "yes." First, the court held that Santiago, though retired, was an "employee" for purposes of the RLA under the holding of *Pennsylvania Railroad Co. v. Day*, 360 U.S. 548, 551-53 (1959). 969 F. Supp. 2d at 965-66. The court also held that her dispute is what *Consolidated Rail Corp. v. Railway Labor Executives' Association* ("*Conrail*"), 491 U.S. 299, 303-04 & n.4 (1989), called a "minor dispute," because it "may be conclusively resolved by interpreting the existing" CBA. 969 F. Supp. 2d at 962 (quoting *Conrail*, 491 U.S. at 305). Section 184 provides that minor disputes must be handled according to the company's internal grievance procedures and then, if an accord is not reached, through arbitration before the System Board. *Id*. at 961-63.

Pursuant to the RLA, the CBA establishes a detailed internal grievance procedure that culminates in final and binding arbitration before the System Board. *Id.* at 958. In February 2008, the AFA and United, "[i]n order to … resolve disputes pertaining to non-disciplinary actions … quickly and effectively," agreed to modify the CBA to require any "Flight Attendant who has an issue concerning any action of the Company which affects her/him, except as may arise out of disciplinary action," to "file a worksheet with the [union], setting forth the basis for the dispute within 60 calendar days after the Flight Attendant(s) reasonably would have knowledge of the dispute." Doc. 169-5 at 6. If the union agrees that the worksheet "reports a

4

potentially valid claim," it files a "Notice of Dispute" with United, which then triggers mandatory "dispute resolution discussions"; unsuccessful discussions in turn are referred to a "Dispute Resolution Committee," which can, among other things, resolve the dispute or refer it to either expedited or traditional arbitration before the System Board. *Id.* at 6-7.

After learning of the March 2011 change to the pass travel program, Santiago attempted to object in writing, first in a pair of August 2011 letters to John Nelson, a United lawyer, and Jeff Smisek, United's CEO, and again in a December 5, 2011 letter to Gregory Davidowitch, President of the United Master Executive Council for the AFA. Doc. 188-3 at 2-3; Doc. 1 at ¶ 53; *see Air Wisconsin Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213, 215 (7th Cir. 1990) ("ALPA does not have locals, but at each airline that it represents there is a committee, called the Master Executive Council, elected by the pilots of that airline. These committees are subordinate bodies of ALPA. Their powers are defined in ALPA's constitution and by-laws … [but] do not include the power to act as collective bargaining representative—ALPA itself is the bargaining representative of the pilots employed by ALPA-organized airlines."). At her deposition, in response to the question "did you ever file a worksheet with the [union] objecting to changes in the company's pas[s] travel policy?" Santiago replied that she "called United['s] legal department" and later "spoke directly to Mr. Smisek," after which she wrote the August 2011 letters. Doc. 188-2 at 4. According to the lawyer who represented Santiago at the deposition but for reasons unexplained has not filed an appearance, "it's [Santiago's] interpretation that this complied with whatever requirements there were in the [union] contract" regarding the filing of a worksheet. *Ibid.* And in one of her briefs, Santiago asserts that she "instituted the statutory grievance procedures by her phone call to John Nelson," the United lawyer. Doc. 189 at 12. Santiago testified that the first written contact she had with the AFA was in December 2011:

> A: … I'm telling you I sent [Davidowitch] a letter on December 5th, 2011.
>
> Q: And that's the first time you sent any letter to—
>
> A: That's what I—
>
> Q: —AFA?
>
> A: —remember, yes.

Doc. 188-2 at 5. Santiago also testified that she did not remember having "any communications with any representative of AFA between March 30, 2011 and" a telephone call with AFA executive vice president Linda Farrow, whom she called "[s]omewhere around th[e] time" that she sent the December 5, 2011 letter to Davidowitch. *Id.* at 4-5.

## Discussion

Much of United's Rule 56(f) brief is devoted to arguing that the court incorrectly denied United's previous summary judgment motion. Doc. 188 at 5-10, 13-19. United gives no valid reason to revisit the court's holdings (1) that Santiago is an RLA "employee" under *Day* and (2) that her challenge to United's change to the pass travel program requires an interpretation of the CBA and is therefore a "minor" dispute under *Conrail*. 969 F. Supp. 2d at 961-66. The court adds only that in a materially identical federal suit in California, United favorably cited and quoted at length this court's summary judgment decision—the very decision it attacks in its Rule 56(f) brief in this case—in arguing that the retiree plaintiff there was an RLA "employee" under *Day* and that the plaintiff's challenge to the change to the pass travel program was a "minor" dispute under *Conrail*. *De Vera v. United Airlines, Inc.*, No. C 12-5644-LB, Doc. 52 at 17-19 & n.5 (N.D. Cal. Dec. 30, 2013). United's continued effort in this suit to challenge positions that United itself embraced in concurrent, materially identical litigation is, to put it mildly, perplexing, particularly given that the same law firm represents United in both cases.

6

Not quite as perplexing, given that she is *pro se*, is that Santiago appears to have reversed herself on the question whether her underlying dispute with United—whether the airline's change to the pass travel program violated the CBA—should be submitted to the System Board, now arguing that this "court is not without power to decide this case" because the System Board lacks authority to redress her grievance. Doc. 193 at 2-3 (capitalization omitted). Santiago's new position on whether this court should resolve that underlying dispute now aligns with United's, which previously asked this court to serve as a "gatekeeper" and decide the suit on the merits. 969 F. Supp. 2d at 961.

This raises the question whether, with both parties now in agreement, the court can decide the merits of Santiago's challenge to the change in the pass travel program. The Supreme Court has long held that the RLA's strictures are jurisdictional. *See*, *e.g.*, *Conrail*, 491 U.S. at 302-04 (contrasting a "major" dispute, over which "the district courts have subject-matter jurisdiction," with a "minor" dispute, over which "[t]he Board (as we shall refer to any adjustment board under the RLA) has exclusive jurisdiction"); *Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) (per curiam); *Bhd. of Locomotive Eng'rs v. Louisville & N. R. Co.*, 373 U.S. 33, 38-39 (1963). And of course the parties cannot by consent confer subject matter jurisdiction that the court does not have. *See CFTC v. Schor*, 478 U.S. 833, 851 (1986).

Complicating the picture, however, is the Supreme Court's relatively recent decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), which articulates a "clear statement" rule for determining whether a statute is jurisdictional: "If the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as

nonjurisdictional in character." *Id.* at 515-16 (footnote and citation omitted, emphasis added). Nothing in § 184 "clearly states" that its provisions limit the jurisdiction of federal district courts, and so under *Arbaugh* the statute would appear not to implicate subject matter jurisdiction. *See Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81-84 (2009) (holding that the conferencing requirement of 45 U.S.C. § 152, Second, Sixth, and certain procedural rules promulgated by the National Railroad Adjustment Board (the analog in the railroad industry to System Boards in the airline industry) under the authority granted by 45 U.S.C. § 153 First (v), are not jurisdictional under *Arbaugh*). And if § 184 is not jurisdictional, the court has the power to resolve the merits of Santiago's claim that United's change to the pass travel program violated the CBA.

To take this route is tempting, because resolving that claim on the merits would be quite simple. It is undisputed that § 4.M of the CBA, which governs the pass travel program, states only that the program "will not be substantially changed or discontinued during the term of this Agreement without first advising the Union the reason therefor and affording the Union an opportunity to confer with the Company." 969 F. Supp. 2d at 958. United has interpreted § 4.M to give it the unilateral right to change the program without union or employee approval, so long as it first advises and then confers with the union. *Ibid.* In fact, United has through the years made numerous unilateral changes to the program, pursuant to § 4.M. *Ibid.* And before implementing the challenged modification to the pass travel program, a United official met with AFA representatives, who did not object to the changes or assert that they violated the CBA. Doc. 147 at ¶ 43. Moreover, the System Board in a 2004 written decision confirmed that § 4.M gives United the unilateral right to modify the pass travel program and held that an addendum to the CBA did not change or restrict that right, even as it applies to retirees. *Id.* at 959; *see* Doc.

131-5 (copy of the decision). That decision is entitled to substantial deference. *See Gunther v. San Diego & A. E. Ry. Co.*, 382 U.S. 257, 261 (1965) ("Certainly it cannot be said that the Board's interpretation was wholly baseless and completely without reason. We hold that the District Court and the Court of Appeals as well went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement."); *Anderson v. Nat'l R.R. Passenger Corp. (AMTRAK)*, 754 F.2d 202, 203 (7th Cir. 1984) ("to succeed on this claim, plaintiff must show that the Board's decision is without foundation in reason or fact, or wholly baseless and without reason") (citations omitted); *Cont'l Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399, 405 (5th Cir. 2009) ("Judicial review of [System Board] decisions arising from the terms of a [CBA] is narrowly limited, and courts should afford great deference to arbitration awards. The standard for this review is among the narrowest known to the law and flows from the RLA's preference for the settlement of disputes in accordance with contractually agreed-upon arbitration procedures.") (internal quotation marks and footnotes omitted). For these reasons, Santiago's claim that United breached the CBA by changing the boarding priority rules of the pass travel program is plainly meritless, because no CBA provision prevents United's doing so; to the contrary, on its face the CBA expressly *permits* it.

But the court will avoid taking this route, not least because the Supreme Court has never repudiated *Conrail* in light of *Arbaugh*. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010) ("[T]he Supreme Court often reminds other judges that they must follow all of its decisions, even those that seem incompatible with more recent ones, until the Justices themselves deliver the coup de grâce."). Nor, to the court's knowledge, has the Seventh Circuit or any other circuit held that § 184 is no longer jurisdictional. In addition, the

9

court hesitates to undermine the RLA's comprehensive statutory scheme: "In enacting [the RLA], Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. … Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Sheehan*, 439 U.S. at 94.

That said, the court will not enjoin United to conduct arbitration before the System Board because, as United also argued in its Rule 56(f) brief, Doc. 188 at 11-12, 18-19, Santiago indisputably failed to exhaust the statutorily required precursors to arbitration. The RLA requires unionized airline employees to pursue grievances "in the usual manner"; only if a satisfactory resolution cannot be reached may the grievance then proceed to arbitration before an adjustment board. 45 U.S.C. § 184 (providing for employee grievances to "be handled in the usual manner"; "but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board"). Here, it is undisputed that the "usual manner" included the "fil[ing of] a worksheet with the [AFA], setting forth the basis for the dispute within 60 calendar days after the Flight Attendant(s) reasonably would have knowledge of the dispute." Doc. 169-5 at 6.

As noted above, Santiago believes that her call to John Nelson, United's lawyer, satisfied this requirement. Doc. 188-2 at 4; Doc. 189 at 12. But by Santiago's own account, her first *written* notice to the *union* was on December 5, 2011, when she sent the letter to Davidowitch. Doc. 188-2 at 5. December 5 is much more than 60 calendar days (it is about 250 calendar days) after March 30, 2011, when Santiago first learned of the change to the program. *Ibid*. Construing the letter to Davidowitch as Santiago's attempt to "file a worksheet with the

[union]"—that is, viewing the letter in a light most favorable to Santiago—it is undisputed that Santiago missed the 60-day deadline by a wide margin. Even the August 2011 letters to Nelson and Smisek (who are United executives, not union personnel) were sent well after the 60-day deadline had expired. As for the telephone conversation with Nelson, no reasonable factfinder could conclude that a *phone call* to a *United* official satisfies the requirement to file a *worksheet* (which implies something in writing) with the *union*. *See Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012) ("When the material facts are not in dispute, the existence and interpretation of a contract are questions of law that the court may decide on a motion for summary judgment."); *S. J. Groves & Sons Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 627*, 581 F.2d 1241, 1244 (7th Cir. 1978) ("Disputes over interpretations of 'just cause' provisions [in the CBA] are resolvable by summary judgment where there is no genuine issue of material fact.").

Santiago, as an RLA "employee" under *Day*, had the right to demand arbitration before the System Board, *see* 969 F. Supp. 2d at 966-69, but that right was conditioned on her following the RLA's pre-arbitration procedures, which means she was required to abide by—that is, exhaust—the carrier's internal grievance procedures. *See* 45 U.S.C. §§ 153 First(i), 184; *Union Pac. R. Co.*, 558 U.S. at 73 ("In keeping with Congress' aim to promote peaceful settlement of minor disputes, the RLA requires employees and carriers, before resorting to arbitration, to exhaust the grievance procedures specified in the collective-bargaining agreement (hereinafter CBA)."); *Transcon. & W. Air v. Koppal*, 345 U.S. 653, 662 (1953) (holding that an airline employee was required "to show that he had exhausted the very administrative procedure contemplated by the Railway Labor Act. In the instant case, he was not able to do so and his complaint was properly dismissed."); *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.*

11

*Co.*, 707 F.3d 791, 793 (7th Cir. 2013) ("Before taking a grievance to the Adjustment Board, the employee or his union must exhaust the employer's internal grievance procedures."); *Kulavic v. Chi. & Ill. Midland Ry. Co.*, 1 F.3d 507, 512-13 (7th Cir. 1993) ("Pursuant to the RLA, a minor dispute must first be handled through the railroad's usual internal dispute resolution procedures."); *Kozy v. Wings W. Airlines, Inc.*, 89 F.3d 635, 639 (9th Cir. 1996) (stating that the RLA "generally requires exhaustion of internal grievance procedures for all 'minor disputes'"); *Larsen v. Am. Airlines, Inc.*, 313 F.2d 599, 600-03 (2d Cir. 1963) (holding that a pilot's failure to meet the 10-day appeals deadline specified in the CBA's internal grievance procedures precluded judicial intervention); Archibald Cox, "Rights Under A Labor Agreement," 69 *Harv. L. Rev.* 601, 647-48 (1956) ("Even if it is assumed that individual employees have sufficient interest in a collective agreement to maintain an action to remedy violations causing personal loss, the individual plaintiff is required to show that he has exhausted his remedies under the contract before seeking judicial intervention."). As the Supreme Court put it in *Vaca v. Sipes*, 386 U.S. 171 (1967): "Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee *must at least attempt* to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Id*. at 184 (emphasis added).

Because Santiago did not exhaust the internal grievance procedures, the court will not enjoin United to submit to arbitration her challenge to the pass travel program. *See Union Pac. R. Co.*, 558 U.S. at 73; *Bhd. of Locomotive Eng'rs & Trainmen*, 707 F.3d at 793. This result is consistent with the result recently reached by another district court in a materially identical retiree pass travel program case. *See Wyatt v. United Airlines, Inc.*, 2014 WL 3955078, at *5

(E.D.N.C. Aug. 13, 2014) (granting United's motion to dismiss a retired flight attendant's request for an injunction compelling arbitration before the System Board because the plaintiff "fail[ed] to allege that she has presented the dispute to the airline's internal grievance system, a statutory precondition to arbitration under the RLA").

Whether a retiree has a meaningful ability to proceed "in the usual manner" through the internal grievance process may at times be debatable. The Supreme Court has held that federal courts may take jurisdiction over even "minor" disputes under circumstances "where the effort to proceed formally with contractual or administrative remedies would be wholly futile." *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969). Without the AFA's support, it is unclear whether Santiago would have had an effective means of vindicating her rights in the internal grievance proceedings. *See id*. at 327 (holding that judicial intervention is warranted where the company and the union "are working 'hand-in-glove'" to thwart the employees' efforts). Consistent with *Glover*, in *Brotherhood of Railway, Airline & Steamship Clerks v. Atchison, Topeka & Santa Fe Railway Co.*, 847 F.2d 403 (7th Cir. 1988), the Seventh Circuit noted that federal courts may take "jurisdiction in cases in which the extrajudicial dispute-resolution framework of the RLA is either unavailable or ineffective," such as when both the employer and the union are adverse to the employee. *Id*. at 410-11; *see also Graham v. Bhd. of Locomotive Firemen & Enginemen*, 338 U.S. 232, 234, 240 (1949) (finding federal jurisdiction over a labor dispute where the union "negotiated agreements and arrangements with the southern railroads which discriminate against colored firemen," explaining that "there is nothing to suggest that, in enacting the subsequent Railway Labor Act provisions …, Congress intended to hold out to them an illusory right for which it was denying them a remedy"); *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 690 (7th Cir. 1982) ("where an internal union appeals procedure

cannot result in … an award of the complete relief sought …, exhaustion will not be required with respect to either the suit against the employer or the suit against the union") (internal quotation marks omitted); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 96 (3d Cir. 1968) (holding that federal courts have jurisdiction to hear a dispute "which pits an employee against his union and his employer," as "[o]therwise … the very parties whose power he challenged, would have the additional power of deciding whether they had exercised it in a proper manner").

But there is no need to resolve whether that exception to the System Board's exclusive jurisdiction applies here, for Santiago was obligated to "at least *attempt* to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."  *Vaca*, 386 U.S. at 184 (emphasis added); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) ("it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so"); *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 791 (6th Cir. 2012) (requiring under the RLA "a clear and positive showing of futility before excusing a failure to exhaust ….  It is insufficient to show that a party subjectively thought procedures would be futile.") (citations omitted); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1052 (11th Cir. 1996) ("Even given the alleged recalcitrance of the union, … Appellant should first have attempted to pursue his grievance before a system board of adjustment individually (or with counsel) and without any union assistance. … [I]t was Pyles' obligation to make an attempt to have his case heard there before resorting to federal court.").  This she failed to do in a timely manner.  And even if the court were wrong in so holding—even if Santiago *did* attempt to exhaust and was foiled, or even if Santiago should for some reason be excused from even attempting to exhaust—the result would be not a compelled arbitration, but a decision by the

court on the merits of her challenge to the change to the pass travel program. As explained above, such a decision would be plainly adverse to Santiago.

## Conclusion

For the foregoing reasons, United is entitled to summary judgment.

December 29, 2014

_____
United States District Judge